1   ROBBINS GELLER RUDMAN
      & DOWD LLP                                    E-Filing
2   DARREN J. ROBBINS (168593)
    RANDALL J. BARON (150796)
3   A. RICK ATWOOD, JR. (156529)
    DAVID T. WISSBROECKER (243867)
4   STEVEN M. JODLOWSKI (239074)
    DAVID A. KNOTTS (235338)                        FILED        #1
5   EUN JIN LEE (264208)
    655 West Broadway, Suite 1900                   OCT 18 2010   Pd
6   San Diego, CA  92101
    Telephone:  619/231-1058                        RICHARD W. WIEKING   SI
7   619/231-7423 (fax)                              CLERK, U.S. DISTRICT COURT
    darrenr@rgrdlaw.com           ADR               NORTHERN DISTRICT OF CALIFORNIA
8   randyb@rgrdlaw.com
    ricka@rgrdlaw.com
9   dwissbroecker@rgrdlaw.com
    sjodlowski@rgrdlaw.com
10  dknotts@rgrdlaw.com
    elee@rgrdlaw.com
11                                                  CV10- 4703
    Attorneys for Plaintiff
12
    [Additional counsel appear on signature page.]
13                                                                          HRL
                        UNITED STATES DISTRICT COURT
14
                       NORTHERN DISTRICT OF CALIFORNIA
15
                              SAN JOSE DIVISION
16
    GLORIA BARLETTA, Individually and on    )   No.
17  Behalf of All Others Similarly Situated, )
                                             )  CLASS ACTION
18                       Plaintiff,          )
                                             )  COMPLAINT FOR BREACH OF
19         vs.                               )  FIDUCIARY DUTIES
                                             )
20  ACTEL CORPORATION, JOHN C. EAST,         )
    JEFFREY C. SMITH, ERIC J. ZAHLER,        )
21  PATRICK W. LITTLE, JAMES R.              )
    FIEBIGER, JACOB S. JACOBSSON, J.         )
22  DANIEL McCRANIE, ROBERT G.               )
    SPENCER, MICROSEMI CORPORATION           )
23  and ARTFUL ACQUISITION CORP.,            )
                                             )
24                       Defendants.         )
                                             )
25
26
27
28

1    Plaintiff, by her attorneys, alleges as follows:

2                        **SUMMARY OF THE ACTION**

3    1.     This is a stockholder class action brought on behalf of the holders of Actel

4    Corporation ("Actel" or the "Company") common stock against Actel's Board of Directors (the

5    "Board") for breaches of fiduciary duty and/or other violations of state law arising out of defendants'

6    efforts to complete the sale of the Company to Artful Acquisition Corp., a wholly owned subsidiary

7    of Microsemi Corporation (collectively with Artful, "Microsemi") pursuant to an unfair process and

8    for an unfair price (the "Proposed Acquisition").  Actel and Microsemi aided and abetted these

9    breaches of fiduciary duty.  Indeed, in pursuing the unlawful plan to sell Actel to Microsemi, each of

10   the defendants violated applicable law by directly breaching and/or aiding the other defendants'

11   breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair

12   dealing.

13   2.     Actel is the leading supplier of low-power field-programmable gate arrays

14   ("FPGAs"), mixed-signal FPGAs, and system-critical FPGAs.  Delivering the lowest power

15   consumption of any comparably sized FPGAs at both the chip and the system level, the Company's

16   flash- and antifuse-based FPGA solutions enable power-efficient design.  In support of its FPGAs, it

17   offers design and development software and tools to optimize power consumption; power-smart

18   intellectual property cores, including industry-standard processor technologies; the industry's

19   smallest footprint packaging; programming hardware and starter kits; and a variety of design

20   services. It targets a wide range of applications in the aerospace, avionics, communications,

21   consumer, industrial and military markets that require low power consumption, high reliability, or

22   the other attributes of the nonvolatile flash-and antifuse-based technologies that have an inherent

23   competitive advantage over traditional SRAM-based FPGAs.

24   3.     Like many companies, Actel suffered from the recent global economic meltdown.

25   However, Actel quickly recovered.  Its improved results have caused its share price to double off of

26   its lows of 18 months ago while substantially outpacing the market.  Nevertheless, Ramius LLC

27   ("Ramius") – an activist investor that owns an illiquid block of nearly 10% of the Company's stock

28   and controls three of the Company's eight Board seats – has been agitating for the Company to

1  explore strategic alternatives.  To further its ends, Ramius had a number of side discussions with

2  Microsemi to facilitate the Proposed Acquisition (and thus Ramius' sale of its illiquid ownership

3  interest in the Company).

4      4.      To that end, on October 4, 2010, Actel and Microsemi jointly announced the

5  Proposed Acquisition which will result in Actel shareholders receiving a mere $20.88 per share in

6  cash for their Actel stock.  The Proposed Acquisition significantly undervalues Actel's intrinsic

7  value and its value to Microsemi, which expects to realize substantial synergies as a result of the

8  deal.

9      5.      Indeed, unlike in most mergers, where the acquiring company's stock suffers a

10  decline on news of the acquisition, Microsemi's stock surged upon the announcement of the

11  Proposed Acquisition as Microsemi's shareholders realized that Microsemi was purchasing Actel

12  "on the cheap," thus transferring Actel's valuable assets and prospects to Microsemi for less than

13  their fair value.  Actel shareholders, meanwhile, drove the Company's shares to a price above the

14  $20.88 offered in the Proposed Acquisition, thus signaling the dissatisfaction of the Company's

15  shareholders with the price to be received in the Proposed Acquisition.

16      6.      The Proposed Acquisition is also the result of an unfair sales process designed to

17  ensure that only Microsemi has an opportunity to acquire the Company.  For example, defendants

18  agreed to preclusive deal protection devices in the Agreement and Plan of Merger with Microsemi

19  (the "Merger Agreement") that create a playing field that is unfairly tilted in favor of Microsemi and

20  effectively chills any potential auction process for the Company, including:

21  • a "poison pill" that prohibits and competing tender offers from being launched for
    the Company;

22

23  • a "top-up option" that promises to give tens of millions of additional Company
    shares to Microsemi to help it make an end run around controlling shareholder law
    and complete the Proposed Acquisition without adequate protection for the

24  Company's public shareholders;

25  • a "No Shop" provision that precludes the defendants from engaging in a fair process
    to sell the Company by seeking out the best possible price for Actel's shareholders,

26  as their fiduciary duties require;

27  • a "Matching Rights" provision that requires Actel to give full information about
    competing acquisition proposals to Microsemi and then allows Microsemi three days

28  to match any competing proposal, thus discouraging competing proposals;

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                                    - 2 -

1       •     a "Termination Fee" provision whereby defendants agreed to pay Microsemi $17.5
2            million in the event the Company receives a higher offer for the Company and its
           shareholders, despite the no shop provision; and

3       •     standstill agreements that potentially prohibit competing bids.

4          7.     To further ensure that the Company is delivered into the hands of Microsemi,

5 defendants have placed the Proposed Acquisition on an absurdly fast track, issuing a 14D-9

6 Recommendation Statement ("14D-9") and Offer to Purchase on the very day that the Proposed

7 Acquisition was announced, and setting an offer deadline of November 1, 2010, less than four weeks

8 later. Furthermore, the 14D-9 is materially deficient in that it fails to disclose sufficient information

9 to shareholders to determine whether to tender their shares and/or seek appraisal for their shares.

10          8.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached

11 their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or

12 has aided and abetted such breaches. Rather than acting in the best interests of the Company's

13 shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed

14 Acquisition to aggrandize their own personal interests and to meet the specific needs of Microsemi,

15 which efforts will eliminate the equity interest of Actel's public shareholders.

16          9.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process

17 that was designed to ensure the merger of Actel with Microsemi, on terms preferential to Microsemi

18 and defendants, and detrimental to plaintiff and Actel's shareholders. Plaintiff seeks to enjoin the

19 Proposed Acquisition.

20                            **INTRADISTRICT ASSIGNMENT**

21          10.     A substantial part of the events or omissions which give rise to the claims in this

22 action occurred in the county of Santa Clara, and as such this action is properly assigned to the San

23 Jose division of this Court.

24                            **JURISDICTION AND VENUE**

25          11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

26 §1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter in

27 controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over

28 this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based upon the

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                 - 3 -

1  statutory or common law of California, Actel's state of incorporation, and thus may be maintained in

2  federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

3        12.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because defendant Actel

4  has its principal place of business in this District. In addition, Individual Defendants John C. East,

5  Patrick W. Little, Jacob S. Jacobsson and J. Daniel McRanie reside in this District. Plaintiff's claims

6  arose in this District, where most of the actionable conduct took place, where most of the documents

7  are electronically stored and where the evidence exists, and where virtually all the witnesses are

8  located and available to testify at the jury trial permitted on these claims in this Court. Moreover,

9  each of the Individual Defendants, as Company officers and/or directors, has extensive contacts with

10  this District.

11                                        **PARTIES**

12        13.    Plaintiff Gloria Barletta is, and at all times relevant hereto was, a shareholder of

13  Actel. Plaintiff is a citizen of the State of Illinois.

14        14.    Defendant Actel is a California corporation headquartered in Mountain View,

15  California. Actel is the leading supplier of low-power FPGAs, mixed-signal FPGAs, and system-

16  critical FPGAs. Delivering the lowest power consumption of any comparably sized FPGAs at both

17  the chip and the system level, the Company's flash- and antifuse-based FPGA solutions enable

18  power-efficient design. In support of its FPGAs, it offers design and development software and tools

19  to optimize power consumption; power-smart intellectual property cores, including industry-standard

20  processor technologies; the industry's smallest footprint packaging; programming hardware and

21  starter kits; and a variety of design services. It targets a wide range of applications in the aerospace,

22  avionics, communications, consumer, industrial and military markets that require low power

23  consumption, high reliability, or the other attributes of the nonvolatile flash-and antifuse-based

24  technologies that have an inherent competitive advantage over traditional SRAM-based FPGAs.

25  Actel is sued herein as an aider and abettor.

26        15.    Defendant John C. East ("East") is and at all times has been a director and the

27  President and Chief Executive Officer of the Company. Defendant East is a citizen of the State of

28  California.

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES          - 4 -

1       16.    Defendant Jeffrey C. Smith ("Smith") is and has been a director of the Company at all

2   relevant times.  Smith is a principal at Ramius, an activist investor that holds nearly 10% of the

3   Company's stock and controls three of the Company's eight Board seats.  Defendant Smith is a

4   citizen of the State of California.

5       17.    Defendant Eric J. Zahler ("Zahler") is and has been a director of the Company at all

6   relevant times. Zahler was placed on the Board by Ramius and Smith. Defendant Zahler is a citizen

7   of the State of Maryland.

8       18.    Defendant Patrick W. Little ("Little") is and has been a director of the Company at all

9   relevant times. Little was placed on the Board by Ramius and Smith.  Defendant Little is a citizen of

10   the State of California.

11       19.    Defendant James R. Fiebiger is and has been a director of the Company at all relevant

12   times. Defendant Fiebiger is a citizen of the State of Arizona.

13       20.    Defendant Jacob S. Jacobsson is and has been a director of the Company at all

14   relevant times. Defendant Jacobsson is a citizen of the State of California.

15       21.    Defendant J. Daniel McCranie is and has been a director of the Company at all

16   relevant times, and presently serves as its Chairman of the Board. Defendant McCranie is a citizen

17   of the State of California.

18       22.    Defendant Robert G. Spencer is and has been a director of the Company at all

19   relevant times. Defendant Spencer is a citizen of the State of California.

20       23.    Defendant Microsemi Corporation is a Delaware corporation that is sued herein as an

21   aider and abettor.

22       24.    Defendant Artful Acquisition Corp. is a California corporation and a wholly owned

23   subsidiary of Microsemi Corporation, and is sued herein as an aider and abettor.

24       25.    The defendants named above in ¶¶15-22 are sometimes collectively referred to herein

25   as the "Individual Defendants."

26                          **CLASS ACTION ALLEGATIONS**

27       26.    Plaintiff brings this action on her own behalf and as a class action on behalf of all

28   public holders of Actel stock who are being and will be harmed by defendants' actions described

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES              - 5 -

1   below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust,

2   corporation, or other entity related to or affiliated with any defendants.

3        27.     This action is properly maintainable as a class action.

4        28.     The Class is so numerous that joinder of all members is impracticable.  According to

5   Actel's United States Securities and Exchange Commission ("SEC") filings, as of August 2010,

6   there were more than 26.2 million shares of Actel common stock outstanding.

7        29.     There are questions of law and fact which are common to the Class and which

8   predominate over questions affecting any individual Class member.  The common questions include,

9   *inter alia*, the following:

10        (a)     whether defendants have breached their fiduciary duties of undivided loyalty,

11   independence, or due care with respect to plaintiff and the other members of the Class in connection

12   with the Proposed Acquisition, and/or are aiding and abetting therein;

13        (b)     whether defendants are engaging in self-dealing in connection with the

14   Proposed Acquisition, and/or are aiding and abetting therein;

15        (c)     whether defendants have breached their fiduciary duty to secure and obtain the

16   best value reasonable under the circumstances for the benefit of plaintiff and the other members of

17   the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

18        (d)     whether defendants are unjustly enriching themselves and other insiders or

19   affiliates of Actel and/or Microsemi, and/or are aiding and abetting therein;

20        (e)     whether defendants have breached any of their other fiduciary duties to

21   plaintiff and the other members of the Class in connection with the Proposed Acquisition, including

22   the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

23        (f)     whether defendants, in bad faith and for improper motives, have impeded or

24   erected barriers to discourage other offers for the Company or its assets, and/or have aided and

25   abetted therein;

26        (g)     whether the Proposed Acquisition compensation payable to plaintiff and the

27   Class is unfair and inadequate; and

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES               - 6 -

1        (h)     whether plaintiff and the other members of the Class would be irreparably

2  harmed were the transactions complained of herein consummated.

3       30.    Plaintiff's claims are typical of the claims of the other members of the Class and

4  plaintiff does not have any interests adverse to the Class.

5       31.    Plaintiff is an adequate representative of the Class, has retained competent counsel

6  experienced in litigation of this nature, and will fairly and adequately protect the interests of the

7  Class.

8       32.    The prosecution of separate actions by individual members of the Class would create

9  a risk of inconsistent or varying adjudications with respect to individual members of the Class which

10  would establish incompatible standards of conduct for the party opposing the Class.

11      33.    Plaintiff anticipates that there will be no difficulty in the management of this

12  litigation. A class action is superior to other available methods for the fair and efficient adjudication

13  of this controversy.

14      34.    Defendants have acted on grounds generally applicable to the Class with respect to

15  the matters complained of herein, thereby making appropriate the relief sought herein with respect to

16  the Class as a whole.

17                  **THE PROPOSED ACQUISITION**

18      35.    Actel is the leading supplier of low-power FPGAs, mixed-signal FPGAs, and system-

19  critical FPGAs. Like many companies, Actel suffered from the recent global economic meltdown.

20  However, Actel quickly recovered. Its improved results have caused its share price to double off of

21  its lows of 18 months ago while substantially outpacing the market.

22      36.    Indeed, in an April 29, 2010 press release entitled "Actel Announces First Quarter

23  2010 Financial Results," the Company announced:

24        Actel Corporation today announced net revenues of $52.3 million for the first quarter of 2010, *up 7.8 percent from the first quarter of 2009 and up 5.2 percent from the*

25        *fourth quarter of 2009.*

26           Actel reported net income in accordance with U.S. generally accepted accounting principles (GAAP) of $2.9 million, or $0.11 per diluted share, for the first

27        quarter of 2010 compared with a net loss of $(3.0) million, or $(0.11) per basic share, for the first quarter of 2009 and a net income of $1.0 million, or $0.04 per diluted

28        share, for the fourth quarter of 2009.

Non-GAAP net income, which excludes stock-based compensation, expenses associated with the restructuring, and other non-recurring adjustments, was $3.8 million, or $0.14 per diluted share, for the first quarter of 2010 compared with $0.8 million, or $0.03 per diluted share, for the first quarter of 2009 and $3.3 million, or $0.12 per diluted share, for the fourth quarter of 2009.

*Significant Developments*

During the first quarter:

- In March, Actel unveiled SmartFusion™ , the world's first intelligent mixed signal FPGA. SmartFusion devices feature Actel's proven FPGA fabric, a complete microcontroller subsystem built around a hard ARM® Cortex™-M3 processor and programmable analog blocks.

- Actel also announced in March a comprehensive development environment and ecosystem for SmartFusion Intelligent Mixed Signal FPGAs, including RTOS support from Micrium, compiler support from IAR Systems, a comprehensive training partnership with Doulos, and full production releases of Actel's own Libero and Soft Console IDE tools.

- Pigeon Point Systems announced a new MMC management solution and IPMC and Carrier IPMC Starter Kits both using SmartFusion Intelligent Mixed Signal FPGAs.

- Actel received a coveted supplier award in March from Mitsubishi Electric Corporation, a prime contractor on many of Japan's most important space programs. This award reflects Actel's continued dedication to quality, reliability and support of the worldwide space market.

- In January, Actel announced that its low power ProASIC3® and ProASICPLUS® FPGA families have been designed into flight-critical applications on the new Boeing 787 Dreamliner commercial airliner. The commercial aircraft successfully completed its maiden test flight on December 15, 2009.

*Business Outlook – Second Quarter 2010*

The Company believes that *second quarter 2010 revenues will be up 8 percent to 12 percent sequentially*. Gross margin is expected to be about 60 percent. Operating expenses are anticipated to come in at approximately $27.8 million, which excludes an estimated $2.0 million of stock-based compensation expense and $0.6 million associated with the acquisition of Pigeon Point Systems. Other income is expected to be about $0.5 million. The non-GAAP tax rate for the quarter is expected to be about 30 percent. Outstanding fully diluted share count is expected to be about 26.4 million shares.

37.     In a July 29, 2010 press release entitled "Actel Announces Second Quarter 2010 Financial Results and Appoints Chairman," the Company stated:

Actel Corporation today announced net revenues of $57.8 million for the second quarter of 2010, *up 27.7 percent from the second quarter of 2009 and up 10.5 percent from the first quarter of 2010.*

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                                    - 8 -

1    Actel reported net income in accordance with U.S. generally accepted accounting principles (GAAP) of $4.8 million, or $0.18 per diluted share, for the second quarter of 2010 compared with a net loss of $(45.1) million, or $(1.73) per basic and diluted share, for the second quarter of 2009 and a net income of $2.9 million, or $0.11 per diluted share, for the first quarter of 2010.

    Non-GAAP net income, which excludes stock-based compensation, expenses associated with restructuring activities, and other non-recurring adjustments, was $6.6 million, or $0.25 per diluted share, for the second quarter of 2010 compared with $14 thousand, or $0.0 per diluted share, for the second quarter of 2009 and $3.8 million, or $0.14 per diluted share, for the first quarter of 2010.

*Significant Developments*

During the second quarter:

• Actel announced a comprehensive motor control solution for its SmartFusion family of devices. The combination of an embedded ARM Cortex-M3, FPGA fabric, and programmable analog make SmartFusion very well suited for complex, single chip motor control applications. As part of the motor control offering, Actel announced a partnership with Trinamic, the industry leader in embedded motion control systems.

• Actel continues to grow the SmartFusion ecosystem with support from Keil, Synopsys and Aplix. The latest release of the Keil MDK-ARM Microcontroller Development Kit supports SmartFusion devices and includes set-up files, device-specific views and example projects. Synopsys' Synplify Pro® FPGA synthesis tools have been enhanced to offer advanced support and timing optimization. With Aplix Corporation's picoJBlend™ platform, Actel and its customers are now able to quickly develop and bring to market intelligent smart grid power management solutions.

• Continuing its commitment to the avionics industry, Actel introduced a new ARINC 429 development kit, leveraging the proven aviation flight heritage of the Core429 IP Core from Actel. The Core429 Development Kit is a hardware development platform designed to simplify the design and debug of a customer's system incorporating the Core429 IP Core.

\*        \*        \*

*Business Outlook – Third Quarter 2010*

    The Company believes that revenues in third quarter of 2010 will be ***up 3 percent to 7 percent sequentially***. Gross margin is expected to be about 65 percent. Operating expenses are anticipated to come in at approximately $25.5 million, which excludes an estimated $2.3 million of stock-based compensation expense, $0.2 million associated with the acquisition of Pigeon Point Systems and restructuring charges of $1.7 million. Other income is expected to be about $0.5 million. The non-GAAP tax rate for the quarter is expected to be about 30 percent. Outstanding fully diluted share count is expected to be about 26.3 million shares.

    38.    Even while Actel was achieving and announcing these impressive results, however, Ramius was having backchannel communications with Microsemi, trying to engineer a merger so that Ramius could cash out of its illiquid holdings in the Company's stock. Ramius' efforts proved

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                                                    - 9 -

1   successful, as Actel and Microsemi announced the Proposed Acquisition on October 4, 2010, in a

2   press release entitled "Microsemi Corporation to Acquire Actel Corporation," which stated:

3       Microsemi Corporation, a leading manufacturer of high performance analog mixed-
        signal integrated circuits, high reliability semiconductors and RF subsystems,
4       announced today that it has entered into a definitive agreement to acquire Actel
        Corporation for $20.88 per share through a cash tender offer. The total transaction
5       value is approximately $430 million, net of Actel's projected cash balance at closing.

6           Headquartered in Mountain View, California, Actel is a leading supplier of
        low-power, mixed-signal, and radiation-tolerant field programmable gate arrays
7       ("FPGAs") serving the Mil/Aero, Industrial, Communication, and Consumer
        markets. The company is the leader in the Satellite and Space markets as a result of
8       its deep knowledge of radiation tolerance, space-level qualifications, and its long
        history of service excellence.
9
10          "*We believe the addition of Actel will deliver compelling synergies to
        Microsemi,*" stated James J. Peterson, Microsemi President and Chief Executive
11      Officer. " Actel will bring the most widely-used mixed-signal, radiation tolerant
        FPGA products in the Aerospace & Defense markets today, and the company's
12      products will allow Microsemi to extend its growing system-level capabilities. As
        Microsemi continues to move up the value chain in offering its customers system
13      solutions that are better, faster, and more-cost effective than they can build
        themselves, Actel's highly-integrated solutions will be an integral component in
14      enabling this growth."

15          "The proposed acquisition of Actel by Microsemi will create a powerful
        combination," said John C. East, Actel President and Chief Executive Officer. "I can
16      think of no company more complementary and better equipped to take Actel's
        solutions to new heights."

17          *Microsemi expects significant synergies from this immediately accretive
        transaction. Based on current assumptions, Microsemi expects the acquisition to
18      be $0.22 to $0.28 accretive in its first full calendar year ending December 2011.*

19          For the September quarter, net sales for Microsemi are expected to range
        from $146 to $150 million. As of this date, Microsemi remains comfortable with its
20      previously announced non-GAAP diluted earnings per share guidance for its fourth
        Fiscal quarter 2010 of $0.33 to $0.35.
21
22      **Tender Offer and Closing**

23          Under the terms of the definitive acquisition agreement, Microsemi will
        commence a cash tender offer to acquire Actel's outstanding shares of common stock
24      at $20.88 per share, net to each holder in cash. Upon satisfaction of the conditions to
        the tender offer and after such time as all shares tendered in the tender offer are
25      accepted for payment, the agreement provides for the parties to effect, subject to
        customary closing conditions, a merger to be completed following completion of the
26      tender offer which would result in all shares not tendered in the tender offer being
        converted into the right to receive $20.88 per share in cash. The transaction is subject
27      to customary closing conditions, including the tender of a majority of the outstanding
        shares of Actel's common stock and regulatory approvals, and is expected to close in
28      Microsemi's fiscal first quarter, ending January 2, 2011. No approval of the
        shareholders of Microsemi is required in connection with the proposed transaction.

Terms of the agreement were unanimously approved by the boards of directors of both Microsemi and Actel.

The transaction is not subject to a financing condition as Microsemi has received a financing commitment from Morgan Stanley Senior Funding, Inc. in connection with the acquisition. The financing commitment includes a $375 million seven year senior term loan facility as well as a $50 million revolving credit facility to replace the Company's existing revolver. Stifel Nicolaus Weisel is acting as financial advisor to Microsemi in the acquisition and its legal advisor is O'Melveny & Myers LLP. Goldman, Sachs & Co. is acting as financial advisor to Actel and its legal advisor is Wilson Sonsini Goodrich & Rosati, PC. Additional financial advisory services were provided to Microsemi by Oppenheimer & Co. Inc.

39.    The Proposed Acquisition significantly undervalues Actel's intrinsic value and its value to Microsemi, as is reflected in the statements that the Proposed Acquisition will be significantly, and immediately, accretive to Microsemi – translation: Microsemi is paying substantially less than Actel is really worth. Shareholder reaction substantiates this conclusion. As has been noted in press coverage regarding the Proposed Acquisition: "Typically, when a sizable acquisition is announced, the buyer's shares take a hit. Not so with Microsemi – investors were likely encouraged by the big profit boost the deal is set to bring. The company said it 'expects significant synergies from this immediately accretive transaction.' The Actel deal is set to yield an additional $18 million to $23 million in profits for Microsemi by the end of 2011." Actel shareholders likewise reacted to the deal, signaling their unhappiness with the price by driving the Company's shares above the $20.88 being offered in the deal.

40.    The Proposed Acquisition is also the result of an unfair sales process designed to ensure that only Microsemi has an opportunity to acquire the Company. For example, defendants agreed to preclusive deal protection devices in the Merger Agreement that create a playing field that is tilted in favor of Microsemi and effectively chills any potential auction process for the Company, including:

- a "poison pill" that prohibits and competing tender offers from being launched for the Company;

- a "top-up option" that promises to give tens of millions of additional Company shares to Microsemi to help it make an end run around controlling shareholder law and complete the Proposed Acquisition without adequate protection for the Company's public shareholders;

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                                        - 11 -

- a "No Shop" provision that precludes the defendants from engaging in a fair process to sell the Company by seeking out the best possible price for Actel's shareholders, as their fiduciary duties require;

- a "Matching Rights" provision that requires Actel to give full information about competing acquisition proposals to Microsemi and then allows Microsemi three days to match any competing proposal, thus discouraging competing proposals;

- a "Termination Fee" provision whereby defendants agreed to pay Microsemi $17.5 million in the event the Company receives a higher offer for the Company and its shareholders, despite the no shop provision; and

- standstill agreements that potentially prohibit competing bids.

41.     To further ensure that the Company is delivered into the hands of Microsemi, defendants have placed the Proposed Acquisition on an absurdly fast track, issuing the 14D-9 and Offer to Purchase on the very day that the Proposed Acquisition was announced, and setting an offer deadline of November 1, 2010, less than four weeks later.  Furthermore, the 14D-9 is materially deficient in that it fails to disclose sufficient information to shareholders to determine whether to tender their shares and/or seek appraisal for their shares, including the failure to provide the financial projections relied upon by the Company's investment advisors and other information regarding the true value of the Company.

42.     Defendants' concern was not the maximization of shareholder value, as it was required by law to be.  As a result of defendants' actions, plaintiff and the Class will suffer irreparable injury, as aforesaid.  Plaintiff and the other members of the Class have no adequate remedy at law.

## DEFENDANTS' FIDUCIARY DUTIES

43.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

1        (b)     will discourage or inhibit alternative offers to purchase control of the

2  corporation or its assets;

3        (c)     contractually prohibits them from complying with their fiduciary duties;

4        (d)     will otherwise adversely affect their duty to search and secure the best value

5  reasonably available under the circumstances for the corporation's shareholders; and/or

6        (e)     will provide the directors with preferential treatment at the expense of, or

7  separate from, the public shareholders.

8      44.     In accordance with their duties of loyalty and good faith, the Individual Defendants,

9  as directors and/or officers of Actel, are obligated to refrain from:

10        (a)     participating in any transaction where the directors' or officers' loyalties are

11  divided;

12        (b)     participating in any transaction where the directors or officers receive or are

13  entitled to receive a personal financial benefit not equally shared by the public shareholders of the

14  corporation; and/or

15        (c)     unjustly enriching themselves at the expense or to the detriment of the public

16  shareholders.

17      45.     Plaintiff alleges herein that defendants, separately and together, in connection with

18  the Proposed Acquisition, violated and/or aided and abetted in the violation of fiduciary duties owed

19  to plaintiff and the other public shareholders of Actel, including the duties of loyalty, good faith,

20  candor, due care and independence.  As a result of these breaches of fiduciary duties and the aiding

21  and abetting therein, neither plaintiff nor the Class will receive adequate or fair value for their Actel

22  common stock in the Proposed Acquisition.

23      46.     Because defendants have breached their duties of due care, loyalty and good faith in

24  connection with the Proposed Acquisition, and/or have aided and abetted therein, the burden of

25  proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its

26  negotiation, structure, price and terms, is placed upon defendants as a matter of law.

27

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES               - 13 -

# CAUSE OF ACTION

## Claim for Breach of Fiduciary Duties and Aiding and Abetting

47.    Plaintiff repeats and realleges each allegation set forth herein.

48.    The Individual Defendants, aided and abetted by the Company and Microsemi, have violated their fiduciary duties of care, loyalty, candor, good faith and independence owed to the public shareholders of Actel and have acted to put their personal interests ahead of the interests of Actel's shareholders.

49.    By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in Actel.

50.    The Individual Defendants have violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to Actel's shareholders. Actel and Microsemi aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of Actel stock.

51.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Actel because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

52.    Because the Individual Defendants dominate and control the business and corporate affairs of Actel, and are in possession of private corporate information concerning Actel's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Actel which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

53.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

1    54.    As a result of the actions of defendants, plaintiff and the Class have been and will be

2  irreparably harmed.

3    55.    Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to

4  breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in

5  arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to Actel's

6  shareholders sufficient information to enable them to make informed decisions regarding the tender

7  of their shares in connection with the Proposed Acquisition, and may consummate the Proposed

8  Acquisition, all to the irreparable harm of the members of the Class.

9    56.    Plaintiff and the members of the Class have no adequate remedy at law.  Only

10  through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected

11  from the immediate and irreparable injury which defendants' actions threaten to inflict.

12                                   **PRAYER FOR RELIEF**

13    WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the

14  Class and against defendants, as follows:

15    A.    Declaring that this action is properly maintainable as a class action;

16    B.    Declaring and decreeing that the Proposed Acquisition agreement was entered into in

17  breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

18    C.    Enjoining defendants, their agents, counsel, employees and all persons acting in

19  concert with them from consummating the Proposed Acquisition, unless and until the Company

20  adopts and implements a procedure or process to obtain the highest possible value for shareholders;

21    D.    Directing the Individual Defendants to exercise their fiduciary duties to obtain a

22  transaction that is in the best interests of Actel's shareholders and to refrain from entering into any

23  transaction until the process for the sale or merger of the Company is completed and the highest

24  possible value is obtained;

25    E.    Rescinding, to the extent already implemented, the Merger Agreement or any of the

26  terms thereof;

27    F.    Awarding plaintiff the costs and disbursements of this action, including reasonable

28  attorneys' and experts' fees; and

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                                      - 15 -

1       G.    Granting such other and further equitable relief as this Court may deem just and

2 proper.

3 DATED: October 18, 2010                   ROBBINS GELLER RUDMAN

4                                     & DOWD LLP
                               DARREN J. ROBBINS

5                                RANDALL J. BARON
                               A. RICK ATWOOD, JR.

6                                DAVID T. WISSBROECKER
                               STEVEN M. JODLOWSKI

7                                DAVID A. KNOTTS
                               EUN JIN LEE

8

9                                     STEVEN M. JODLOWSKI

10                                655 West Broadway, Suite 1900

11                                San Diego, CA  92101
                               Telephone: 619/231-1058

12                                619/231-7423 (fax)

13                                HAGENS BERMAN SOBOL SHAPIRO LLP
                               KARL P. BARTH

14                                1918 8th Avenue, Suite 3300
                               Seattle, WA  98101

15                                Telephone: 206/623-7292
                               206/623-0594 (fax)

16

17                                LEVETOWN & JENKINS, LLP
                               MICHAEL P. LEWIS

18                                700 12th Street, NW, Suite 700
                               Washington, D.C.  20005

19                                Telephone: 202/379-4899
                               866/278-2973 (fax)

20                                Attorneys for Plaintiff

21 S:\CptDraft\Securities\Actel Fed.doc

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES                    - 16 -

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5

6                                    ATTORNEY OF RECORD FOR PLAINTIFF
                                     GLORIA BARLETTA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                    - 1 -